FILED ___ ENTERED
___ LOGGED ___ RECEIVED

NOV - 5 2010

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

SAB: USAO 2010R00181

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. DKC 10 CR 0688 |
| | * | |
| FRANK P. JENKINS, II, | * | (Wire Fraud, 18 U.S.C. § 1343; Mail |
| | * | Fraud, 18 U.S.C. § 1341; Aiding and |
| Defendant | * | Abetting, 18 U.S.C. § 2) |
| | * | |

*******

## INFORMATION

### COUNTS ONE THROUGH SIX

The United States Attorney for the District of Maryland charges that:

### Introduction

1.  Prior to September 15, 2009, defendant **FRANK P. JENKINS, II ("JENKINS")** was an attorney licensed to practice law in the State of Maryland and a resident of Charles County, Maryland. Defendant **JENKINS** did business as Frank P. Jenkins, PC, Attorney-at-Law, in LaPlata, Maryland, and also utilized the business names The Jenkins Group, Inc., Jenkins Real Estate, Inc. and Exit Prom Homes Realty. On or about September 15, 2009, defendant **JENKINS** was disbarred by consent by the Court of Appeals of Maryland.

### The Scheme to Defraud

2.  Beginning no later than in or about 2006, and continuing until in or about 2009, in the District of Maryland and elsewhere, defendant **JENKINS** knowingly and willfully devised and intended to devise a scheme and artifice to defraud clients of his law practice and lenders in real estate transactions, and to obtain the clients' and lenders' money and property by means of materially false and fraudulent pretenses, representations and promises ("the scheme to

defraud").

## Manner and Means of the Scheme to Defraud

3.   It was part of the scheme to defraud that defendant **JENKINS** would cause clients to transfer money into bank accounts that he controlled and then embezzle the funds for his own purposes rather than fulfill his fiduciary obligations to his clients.

4.   It was further part of the scheme to defraud that defendant **JENKINS** would make false statements to his clients, including but not limited to false statements about his handling of estates and civil litigation, and provide them with fictitious and fraudulent documents, including but not limited to fraudulent deeds and deeds of trust relating to real property.

5.   It was further part of the scheme to defraud that defendant **JENKINS** would forge the signatures of his clients, including but not limited to signatures on court documents such as consent judgments.

6.   It was further part of the scheme to defraud that defendant **JENKINS** would use funds embezzled from clients for his own personal expenses and, in some instances, to repay other clients whom he had previously defrauded.

7.   It was further part of the scheme to defraud that defendant **JENKINS** would conduct fraudulent real estate transactions and obtain loans based on false representations that the loans were secured by real property that he owned.

A.   **Estate of M.P.J.**

8.   It was further part of the scheme to defraud that in or about July 2009, defendant **JENKINS** embezzled funds from the estate of M.P.J., who died on July 10, 2009, by causing the estate's personal representative to transfer more than $891,000 into defendant's accounts at

Chevy Chase Bank, in the form of interstate wire transfers in the amounts of $278,189.87, $280,377.54, $42,213.86 and $102,734.94 and a cashier's check in the amount of $195,596.08.

9. It was a further part of the scheme to defraud that defendant **JENKINS** gave the estate's personal representative a fraudulent deed of trust to real property.

10. It was a further part of the scheme to defraud that defendant **JENKINS** used funds embezzled from M.P.J.'s estate to repay money previously taken from other clients and to purchase tickets to Washington Capitals hockey games.

B. **Estate of P.H.**

11. It was further part of the scheme to defraud that between in or about July 2008 through in or about October 2008, defendant **JENKINS** embezzled funds from the estate of P.H., who died on June 1, 2007, by causing the estate's personal representative to transfer more than $1,080,000 into defendant's accounts at Bank of America, in the form of cashier's checks in the amounts of $106,906.89, $293,911.51, $157,629.06, and $275,558.89, and an interstate wire transfer in the amount of $246,566.13.

12. It was further part of the scheme to defraud that defendant **JENKINS** charged the estate of P.H. approximately $47,000 in legal fees.

13. It was a further part of the scheme to defraud that defendant **JENKINS** used funds embezzled from P.H.'s estate to pay an American Express bill and to make additional payments for hockey tickets to the Washington Capitals.

C. **Civil Judgment Against P.W.**

14. It was further part of the scheme to defraud that beginning in 2006, defendant **JENKINS** represented P.W. in a civil lawsuit filed in the Circuit Court for Charles County.

After a judgment for $50,000 was entered against P.W, P.W.'s mother, J.M., purchased a $50,000 cashier's check from Bank of America to pay off the judgment. On or about November 1, 2007, defendant **JENKINS** caused the check to be made payable to him, deposited the check into a PNC Bank account in the name of his law practice, and thereafter embezzled the funds for his own purposes rather than paying the judgment.

15. It was further part of the scheme to defraud that in or about May 2009, after P.W. and J.M. learned that the judgment had not been paid, defendant **JENKINS** gave J.M. a check for $52,500 drawn on an account in the name of his law practice, knowing that the account did not contain sufficient funds to permit the check to be successfully negotiated.

16. It was further part of the scheme to defraud that after the May 2009 check was returned for insufficient funds, defendant **JENKINS** paid the outstanding judgment with a Chevy Chase Bank cashier's check, dated August 3, 2009 in the amount of $52,500, which he purchased using funds that he embezzled from the M.P.J. estate.

   D.   **D.G.M. Real Estate Transaction**

17. It was further part of the scheme to defraud that in or about 2009, D.G.M., D.C.M. and N.M. retained defendant **JENKINS** to conduct a title transfer relating to real property located in Mechanicsville, St. Mary's County, Maryland ("the Mechanicsville property").

18. It was further part of the scheme to defraud that on or about February 19, 2009, defendant **JENKINS** accepted a check for $51,860.11 from his clients that was intended to pay off existing mortgage debt, but thereafter deposited the check into a Bank of America account in the name of Jenkins Real Estate, Inc. and embezzled the funds for his own purposes.

19.    It was further part of the scheme to defraud that in or about May 2009, after his clients learned that the mortgage had not been paid, defendant **JENKINS** gave D.C.M. a check for $53,000 drawn on an account in the name of his law practice, knowing that the account did not contain sufficient funds to permit the check to be successfully negotiated.

20.    It was further part of the scheme to defraud that after the May 2009 check was returned for insufficient funds, defendant **JENKINS** gave the clients three Chevy Chase Bank cashier's checks, in the amounts of $53,400, $2,500, and $1,673.43, which he purchased using funds that he embezzled from the M.P.J. estate.

E.    **Estate of B.V.L.**

21.    It was further part of the scheme to defraud that in or about February 2009, F.L. hired defendant **JENKINS** to handle the estate of his late wife, B.V.L., who had died on or about November 20, 2008.  After defendant **JENKINS** instructed F.L. to close out an existing bank account and to give him a check for the balance, F.L. gave defendant **JENKINS** a cashier's check in the amount of $32,000.  On or about March 10, 2009, defendant **JENKINS** deposited the check into a Bank of America account in the name of Jenkins Real Estate, Inc.  Defendant **JENKINS** also caused F.L. to pay an additional $2,200, allegedly for the cost of newspaper advertisements.

22.    It was further part of the scheme to defraud that defendant **JENKINS** embezzled the funds and never made any payments from the estate to F.L.

F.  **Civil Litigation Involving the P Family Clients**

23.  It was further part of the scheme to defraud that in or about 2005, G.P., N.P, Sa. P. and Sh. P. ("the P family clients ") retained defendant **JENKINS** to represent them in connection with the purchase of a liquor store in St. Mary's County, Maryland.  After the purchase fell through, the other parties to the liquor store transaction, S.B. and T.B., sued the P family clients for breach of contract in the Circuit Court for St. Mary's County.

24.  It was further part of the scheme to defraud that defendant **JENKINS** did not properly defend the case or communicate with his clients and eventually urged the P family clients to sign a settlement agreement in which they would pay $150,000 in damages, which the clients refused to sign.

25.  It was further part of the scheme to defraud that on or about June 3, 2009, when the case was set for trial, defendant **JENKINS** forged the signatures of the P family clients to a consent judgment, which was filed in the Circuit Court for St. Mary's County and entered by the court.

26.  It was further part of the scheme to defraud that in a fraudulent attempt to satisfy the Consent Judgment, defendant **JENKINS** gave counsel for S.B. and T.B. a check for $100,000, dated June 5, 2009, drawn on one of his Bank of America accounts, which could not be cashed because it was not backed by sufficient funds.

G.  **Fraudulent Real Estate Transaction with C.T. and L.T. and Fraudulent Loan Application to Equity Lending, LLC**

27.  It was further part of the scheme to defraud that in or about late 2008 and early 2009, defendant **JENKINS** negotiated with C.T. and L.T. to purchase real property on Golden

Thompson Road in Avenue, St. Mary's County, Maryland ("the Avenue property").

28. It was further part of the scheme to defraud that on or about May 12, 2009, defendant **JENKINS** entered into a contract to purchase the property from C.T. and L.T. for $300,000, after which he caused his law firm to prepare all documents relating to the settlement.

29. It was further part of the scheme to defraud that at the real estate closing on or about May 20, 2009, defendant **JENKINS** did not produce the funds, but induced C.T. and L.T. to sign a deed transferring the Avenue property to him by representing that he would pay them at a later date and would sign a deed of trust and promissory note. Defendant **JENKINS** then recorded the deed but did not record the deed of trust.

30. It was further part of the scheme to defraud that in or about July 2009, defendant **JENKINS** applied for a refinance loan on the Avenue property from Equity Lending, LLC of Reisterstown, Maryland. In his Uniform Residential Loan Application, defendant **JENKINS** fraudulently represented that he owned the Avenue property in fee simple. On or about August 21, 2009, the property went to settlement, and defendant **JENKINS** received and deposited into an account at Chevy Chase Bank a check for $128,654.19 from a title company.

### Execution of the Scheme to Defraud

31. On or about each date listed below, in the District of Maryland and elsewhere, the defendant,

**FRANK P. JENKINS, II,**

did transmit and cause to be transmitted by means of wire communication in interstate commerce, in the form of wire transfers processed at the Federal Reserve System's Fedwire Funds Service Center in East Rutherford, New Jersey and deposited checks processed as digital

images through the Federal Reserve System and the Federal Reserve Bank of Richmond, Virginia, certain writings, signs, signals, and sounds, as listed below, for the purpose of executing the scheme to defraud:

| Count | Date | Wire Transmission |
|---|---|---|
| 1 | July 23, 2009 | In connection with defendant **JENKINS**'s representation of the Estate of M.P.J., a wire transfer of $278,189.87 from County First Bank to Chevy Chase Bank. |
| 2 | July 23, 2009 | In connection with defendant **JENKINS**'s representation of the Estate of P.H., a wire transfer of $246,566.13 from PNC Bank to Bank of America. |
| 3 | November 1, 2007 | In connection with defendant **JENKINS**'s representation of P.W., the clearing of a $50,000 cashier's check deposited by defendant at PNC Bank. |
| 4 | February 19, 2009 | In connection with defendant **JENKINS**'s representation of D.G.M., D.C.M. and N.M., the clearing of a $51,860.11 check deposited by defendant at PNC Bank. |
| 5 | March 10, 2009 | In connection with defendant **JENKINS**'s representation of the Estate of B.V.I., the clearing of a $32,000 cashier's check deposited by defendant at Bank of America. |
| 6 | August 25, 2009 | In connection with defendant **JENKINS**'s loan application to Equity Lending, LLC, using the Avenue property as collateral, the clearing of a $128,654.19 check from a title company, deposited by defendant at Chevy Chase Bank. |

18 U.S.C. § 1343
18 U.S.C. § 2

## COUNTS SEVEN AND EIGHT

The United States Attorney for the District of Maryland further charges that:

1. Paragraphs 1 through 30 of Counts One through Six are incorporated here.

2. On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

**FRANK P. JENKINS, II,**

for the purpose of executing and attempting to execute the scheme and artifice to defraud, knowingly caused to be placed in an authorized depository for mail the items described below, and caused the following items to be delivered by the Postal Service, according to the direction thereon:

| Count | Date | Mailing |
|-------|------|---------|
| 7 | June 4, 2009 | In connection with defendant JENKINS's representation of the P Family clients, mailing of Consent Judgment from Circuit Court for St. Mary's County, Leonardtown, Maryland to counsel in civil litigation between S.B. and T.B. and P Family clients. |
| 8 | June 29, 2009 | In connection with defendant JENKINS's fraudulent purchase of the Avenue property from C.T. and L.T., mailing of recorded Fee Simple Deed from Circuit Court for St. Mary's County, Leonardtown, Maryland to defendant JENKINS in LaPlata, Maryland. |

18 U.S.C. § 1341
18 U.S.C. § 2

*Rod J. Rosenstein/SB*
Rod J. Rosenstein
United States Attorney

Dated: November 5, 2010